UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KAREN L. WHITAKER,

       Plaintiff,

v.                                                                                       Case No. 1:14-cv-1090
                                                                                         Hon. Ray Kent
COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB).

Plaintiff was born in 1960. PageID.250. She completed the 11th grade and had past employment as a laborer with a temporary service, a laborer in a nursing home, a fast food restaurant crew member, a cashier, and a motel business manager. PageID.255. She alleged a disability onset date of January 1, 2010. PageID.250. Plaintiff identified her disabling condition as depression. PageID.254. The administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on March 22, 2013. PageID.49-59. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

>The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

**II. ALJ'S DECISION**

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that she had not engaged in substantial gainful activity since the alleged onset date of January 1, 2010, and that she met the insured status requirements of the Act through December 31, 2014. PageID.51. At the second step, the ALJ found that plaintiff had the severe impairments of affective disorder and drug/alcohol abuse (DAA) in sustained remission. *Id.* At the third step, the ALJ found that plaintiff

3

did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.52.

The ALJ decided at the fourth step that:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: no physical limitations; can understand, remember and carry out simple instructions; can have occasional general public, coworker and supervisory contact/interaction; would work better in small group environment and/or low stress setting.

PageID.54. The ALJ also found that plaintiff was unable to perform any of her past relevant work. PageID.58.

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled jobs at all exertional levels in the national economy. PageID.58-59. Specifically, plaintiff could perform the following unskilled jobs in Michigan: machine feeder (15,000 jobs); packager (7,200 jobs); and production helper (14,000 jobs). PageID.59.[1] Accordingly, the ALJ found that plaintiff has not been under a disability, as defined in the Social Security Act, from January 1, 2010 (the alleged onset date) through March 22, 2013 (the date of the decision). PageID.59.

### III. ANALYSIS

Plaintiff raised one issue on appeal.

**A.     The Commissioner erroneously failed to give appropriate weight to the opinions of treating sources.**

A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In

---

[1] The ALJ's decision did not state whether these jobs were located in the region or throughout the nation. However, the vocational expert testified that these jobs were located in the State of Michigan. PageID.116.

4

general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. §§ 404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. §§ 404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

5

        **1.     Amy Hogue, M.D.**

Dr. Hogue is plaintiff's primary care physician. The doctor completed a diabetes residual functional capacity (RFC) form on November 13, 2012. PageID.695-698. Plaintiff points out that in the form, Dr. Hogue stated that plaintiff suffered from symptoms including fatigue, difficulty walking, episodic vison blurriness, general malaise, psychological problems, extreme pain or numbness, difficulty thinking/concentrating, and headaches. PageID.708. In her brief, plaintiff relies on Dr. Hogue's opinions regarding her mental impairments, i.e., that her pain and other symptoms were severe enough to frequently (34% to 66% of an 8-hour work day) interfere with attention and concentration to perform even simple work tasks, that she was incapable of even low stress jobs, that she would be absent more than four days per month due to the severity of her impairments, and that the "extent of the patient's psychiatric illness would be a significant barrier to her ability to work in full time employment." PageID.695-698, 708-709.

The ALJ performed an extensive review of Dr. Hogue's assessment, which appears in its entirety below:

> The claimant submitted another medical opinion statement from Dr. Hogue at exhibit l8F. Dr. Hogue addresses both the diabetes and the mental health aspect of this case. Dr. Hogue listed clinical findings of diabetic neuropathy, anxiety and depression and these are actually diagnoses that Dr. Hogue may have meant to list elsewhere. The claimant is listed as apparently suffering from diabetic neuropathy as the basis for her physical limitations per Dr. Hogue. However, all of the clinical findings from Dr. Hogue and the facility Dr. Hogue is affiliated with refer to the diabetes neuropathy as negative, or not present. The clinical findings do not support the presence of diabetic neuropathy, and the most frequent indication of diabetic neuropathy is how the claimant presented this issue as a subjective symptom. For example, the clinical findings for diabetes were negative or within normal limits at exhibits 12F, pp. 4, 15, 22, 25, and 50.

        \*     \*     \*

>Exhibit 18F also cites the psychiatric problems as a basis for finding that the claimant is incapable of working. Dr. Hogue refers to having met the claimant first during the end of 2011, and signed the medical statement 11/13/2012. During that time the claimant was meeting with Ms. Bouwma [a licensed master's social worker (LMSW)] at Muskegon Family Care, as Dr. Hogue and Ms. Bouwma worked at that facility simultaneously. Dr. Hogue's actual clinical notes show that she was deferring to Ms. Bouwma for the mental health issues and course of treatment.
>
>Dr. Hogue is a primary care source and hence was not overly involved in the treatment of the claimant's depression and anxiety. This summary from Dr. Hogue is not entitled to any particular weight. As Dr. Hogue relies upon Ms. Bouwma at this practice, it is also relevant that the clinician refers to the claimant as having some improvement in her functional status. At exhibit 12F, p. 18 her GAF had improved to 60 per Ms. Bouwma. This is inconsistent with exhibits 18F and 16F, wherein the claimant supposedly has serious limitations that would meet or equal listing 12.04 if adopted. The psychiatric treatment notes also states that the claimant improved with the use of Seroquel (ex. 12F, p. 23).
>
>Dr. Hogue did not refer to the claimant having significant physical restrictions, and many of the questions pertaining to sitting, standing, walking, lifting, carrying, reaching, handling and fingering were not addressed as this is something the source did not test or assess. She was found to have no limits in lifting, carrying weights up to 50 pounds occasionally. Dr. Hogue mostly emphasized the psychiatric component and how that could be a barrier to her ability to work full time (ex. 18F).

PageID.56-57.

Based on this record, the Court concludes that the ALJ failed to give good reasons for the weight assigned to Dr. Hogue's opinions regarding plaintiff's mental condition. First, the ALJ avoided assigning weight to Dr. Hogue's opinions by stating that the doctor's summary "is not entitled to any particular weight." *See* 20 C.F.R. § 404.1527(c) ("Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.").

Second, the ALJ discounted Dr. Hogue's opinion because the doctor "is a primary care source and hence was not overly involved in the treatment of the claimant's depression and anxiety." PageID.57. The Court disagrees with this characterization of the doctor's ability to render a medical opinion regarding plaintiff's mental impairments. It is well established that an ALJ can discount a psychologist's opinion about the claimant's physical functioning, because a psychologist is not qualified to diagnose a physical condition. *See Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001). However, as an M.D. licensed to practice medicine in Michigan, Dr. Hogue is qualified to treat both physical and mental conditions. *See Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (a duly licensed physician under the laws of most states, can practice and render psychiatric services, i.e., prescribe psychotropic medication, conduct psychotherapy, etc.); M.C.L. § 333.17001(f) ("'Practice of medicine' means the diagnosis, treatment, prevention, cure, or relieving of a human disease, ailment, defect, complaint, or other physical *or mental condition,* by attendance, advice, device, diagnostic test, or other means, or offering, undertaking, attempting to do, or holding oneself out as able to do, any of these acts") (emphasis added). "While the medical profession has standards which purport to restrict the practice of psychiatry to physicians who have completed residency training programs in psychiatry, it is well established that primary care physicians (those in family or general practice) 'identify and treat the majority of Americans' psychiatric disorders.'" *Sprague*, 812 F.2d at 1232. Thus, for purposes of a disability claim, "[a] treating physician's opinion on the mental state of his patient constitutes competent medical evidence even though the physician is not a certified psychiatrist." *Bushor v. Commissioner of Social Security*, No. 1:09-cv-320, 2010 WL 2262337 at * 10, fn. 4 (S.D. Ohio April 15, 2010). *See also*, *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995) (where a medical doctor treating a claimant for chronic pain expressed opinions regarding the claimant's mental restrictions, those

opinions constituted "competent psychiatric evidence" and may not be discredited by an ALJ on the ground that the doctor is not a board certified psychiatrist). For these reasons, the ALJ's decision is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate Dr. Hogue's opinion with respect to plaintiff's mental condition.

### 2. Ms. Bouwma

Plaintiff contends that the ALJ misinterpreted Ms. Bouwma's opinions expressed in a mental RFC questionnaire. PageID.382-390. Although Ms. Bouwma is a social worker, plaintiff refers to her as plaintiff's "treating psychologist since 1998" and suggests that the ALJ should treat Ms. Bouwma's opinions under the treating physician doctrine. PageID.706-710. The requirement that the Commissioner give "good reasons" for the weight given to an opinion applies only to "treating sources" (i.e., a physician, psychologist or other acceptable medical source who has provided medical treatment or evaluation). *See Smith v. Commissioner of Social Security*, 482 F.3d 873, 876 (6th Cir.2007) ("[b]efore determining whether the ALJ violated *Wilson* by failing to properly consider a medical source, we must first classify that source as a 'treating source'"); *Burke ex rel. A.R.B. v. Astrue*, No. 6:07-cv-376, 2008 WL 1771923at *7 (E.D. Ky. April 17, 2008) ("the deferential reason-giving requirements for the rejection of a treating-source opinion necessarily do not apply where the source in question is not an 'acceptable medical source'"). An "acceptable medical source" refers to one of the sources described in 20 C.F.R. § 404.1513(a), i.e., licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. *See* 20 C.F.R. § 404.1502. As a social worker, Ms. Bouwma is considered an "other" medical source. *See* 20 C.F.R. § 404.1513(d)(1) ("other" medical sources include nurse-practitioners, physicians' assistants, naturopaths, chiropractors, audiologists and therapists). Because Ms. Bouwma is not an

acceptable medical source, the ALJ was neither required to give her opinions "complete deference" nor required to meet the "good reason" requirement of § 404.1527(c)(2). *See Smith*, 482 F.3d at 876; *Burke ex rel. A.R.B.*, 2008 WL 1771923 at *7. Nevertheless, "the ALJ's decision still must say enough to allow the appellate court to trace the path of his reasoning." *Stacey v. Commissioner of Social Security*, 451 Fed. Appx. 517, 519 (6th Cir. 2011) (internal quotation marks omitted). Here, the ALJ provided a reasoned discussion of Ms. Bouwma's opinion. PageID.55-56. Accordingly, this claim of error is denied.[2]

### IV. CONCLUSION

For the reasons discussed, the Commissioner's decision will be **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner is directed to re-evaluate Dr. Hogue's opinion with respect to plaintiff's mental condition. A judgment consistent with this opinion will be issued forthwith.

Date: March 16, 2016     /s/ Ray Kent
                         Ray Kent
                         United States Magistrate Judge

---

[2] Plaintiff attached documents to her brief, including an update from Ms. Bouwma which may have been omitted from the administrative transcript. PageID.712-713. Plaintiff, however, does not seek a remand under sentence-six of 42 U.S.C. § 405(g) to review this new evidence. Accordingly, these documents will not be considered.